No. 81-174

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

IN THE MATTER OF THE TERMINATION OF
JOINT TENANCY OF RONALD MILLER
SINCLAIR, Deceased.

---

Appeal from: District Court of the Eighteenth Judicial
District,
In and for the County of Gallatin,
Honorable Joseph B. Gary, Judge presiding.

Counsel of Record:

For Appellant:

Bolinger & Higgins, Bozeman, Montana

For Respondent:

Mike Rieley, Dept. of Revenue, Helena, Montana

---

Submitted on briefs: November 18, 1981

Decided: February 18, 1982

Filed: FEB 18 1982

*Thomas J. Kearney*
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Mrs. Jane Sinclair, the widow of Ronald Sinclair, deceased, appealed to the District Court of the Eighteenth Judicial District from a determination by the Department of Revenue (Department) that inheritance tax was due as a result of transfers in contemplation of death. The District Court affirmed the Department's determination. We reverse the District Court.

Mr. and Mrs. Sinclair, husband and wife, had a joint tenancy bank account for many years. Mr. Sinclair became ill. Mrs. Sinclair withdrew $55,000 from the account, and obtained one $5,000 joint tenancy Federal Credit Bond with one sister and a $25,000 joint tenancy Treasury Note with each of two other sisters. Mrs. Sinclair was named as a joint tenant on each instrument with one of her sisters. The District Court found that the money was to be used by the sisters-in-law to pay for the expenses of Mr. Sinclair in the event that Mrs. Sinclair became incapacitated. Mr. Sinclair died within three years of the transfer. The bond and notes had not been cashed at his death. Mrs. Sinclair has since cashed the $5,000 bond for herself and has always had possession of the two notes. Mr. Sinclair had no part in transferring the funds.

The Department contends that as a result of transfers in contemplation of death to the sisters of Mrs. Sinclair, an inheritance tax is due in the total amount of $2,182.25.

The Department bases its contention on section 72-16-301, MCA, which provides in part:

> "A tax shall be and is hereby imposed upon
> any transfer of property, real, personal,
> or mixed or any interest therein or income

-2-

therefrom in trust or otherwise to any person, association, or corporation in the following cases, except as hereinafter provided:

". . .

"(3) when the transfer is of property made by a resident or by a nonresident when such nonresident's property is within the state or within its jurisdiction by deed, grant, bargain, sale, or gift made in contemplation of the death of the grantor, vendor, or donor or intended to take effect in possession or enjoyment at or after such death. Every transfer by deed, grant, bargain, sale, or gift made within 3 years prior to the death of the grantor, vendor, or donor of a material part of his estate or in the nature of a final disposition or distribution thereof and without a fair consideration in money or money's worth shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section, but no such transfer by deed, grant, bargain, sale, or gift made before such 3 year period shall be treated as having been made in contemplation of death." (Underscoring added.)

The funds were not transferred to the new joint tenancy bond or notes by Mr. Sinclair but rather by Mrs. Sinclair. The Department contends that Mrs. Sinclair was acting for her husband and it was as if he transferred the funds. The Department and the District Court relied upon Haneke v. United States (4th Cir. 1977), 548 F.2d 1138. The factual situation in Haneke was similar to the present situation. The husband established five savings accounts in joint tenancy with his wife. The husband became ill, and the wife, in order to take care of him if anything should happen to her, transferred funds from the joint tenancy accounts with her husband to joint tenancy accounts with her sister-in-law. This was without the husband's consent or knowledge. He died within three years of the transfer. The court in Haneke held that the transfers were made in contemplation of death and were includable in the decedent's gross estate for Federal Estate Tax purposes under Section 2035 of the Internal

Revenue Code. The court rejected the argument that the funds could not be included in the husband's estate because the wife, not her husband, had made the transfers. The court stated that "Mrs. Haneke was acting as her husband's alter ego, and consequently, her intention should be imputed to him." Haneke, 548 F.2d at 1140. In support of its holding the 4th Circuit Court cited City Bank Farmers Trust Co. v. McGowan (1945), 323 U.S. 594, 65 S.Ct. 496, 89 L.Ed. 483. In that case a woman had been adjudicated an incompetent by the New York Supreme Court, and a committee was appointed to care for her property. The court directed the committee to pay large yearly allowances to certain relatives. These transfers were found to be made in contemplation of death even though the decedent did not make the transfers. The court held "that where, as in New York, the court is to substitute itself as nearly as may be for the incompetent, and to act upon the same motives and considerations as would have moved her, the transfer is, in legal effect, her act and the motive is hers." City Bank Farmers Trust Co., 323 U.S. at 599, 65 S.Ct. at 498, 89 L.Ed. at 489.

As the decision is by the Fourth Federal Circuit, Haneke is not binding upon this Court, except to the degree that the reasoning of the decision appears compelling. We disagree with the basic determination in Haneke and do not find that City Bank Farmers Trust Co. is authority for its conclusion. City Bank Farmers Trust Co. held that the actions of a court-appointed committee acting in the capacity of conservator and guardian of the assets of an incompetent are the equivalent of actions by the incompetent himself, so that transfers made by the committee were considered to be in contemplation of death in the same manner as though the incompetent himself had made the transfers. That analysis

-4-

is appropriate. However, Haneke extended this theory to transfers by a joint tenant from a bank account with one joint tenant acting as the alter ego of the other joint tenant. Regardless of the intention on the part of Mrs. Sinclair at the time she withdrew the $55,000, Mrs. Sinclair thereby did not become an alter ego or agent of her husband. As a joint tenant, Mrs. Sinclair had the right to withdraw funds from the account at any time, and under the Montana Inheritance Tax Law, the intention or purpose at the time of withdrawal is not controlling for the determination of inheritance tax. Because the rationale of Haneke is not appropriate in Montana, we do not adopt it as authority.

The facts here show that the critical step for inheritance tax purposes was the withdrawal by Mrs. Sinclair of the $55,000. That is the taxable event, if any. By the withdrawal of the $55,000, Mrs. Sinclair acquired full dominion over the money and terminated any joint tenancy interest on the part of her husband. Casagranda v. Donahue (1978), 178 Mont. 479, 483, 585 P.2d 1286, 1288. Our key question therefore becomes whether the withdrawal of the $55,000 is taxable under Montana inheritance tax law. Under section 72-16-313(1), MCA, a transfer to a spouse is not taxable. As a result, the withdrawal of funds by Mrs. Sinclair, although made within three years of death, is not a taxable transfer.

After withdrawal, Mrs. Sinclair used the $55,000 for the acquisition of the bond and notes which she placed in joint tenancies in her name and that of her three sisters. The steps taken in the acquisition of the bond and notes do not constitute transfers from the deceased to anyone, and therefore are not transfers subject to Montana inheritance tax.

We reverse the District Court, and remand with instructions to enter an appropriate order showing no inheritance tax due.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices