DA 06-0389

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 226

GEORGE H. DAVIS,

        Petitioner and Appellant,

  v.

STATE OF MONTANA,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC-04-67
Honorable James A. Haynes, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        William Boggs, Attorney at Law, Missoula, Montana

      For Appellee:

        Hon. Mike McGrath, Attorney General; Pamela P. Collins, Assistant
Attorney General, Helena, Montana

        George Corn, Ravalli County Attorney, Hamilton, Montana

Submitted on Briefs:  January 24, 2007

Decided:  June 24, 2008

Filed:

                        Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     George H. Davis (Davis) appeals from the order of the Twenty-First Judicial District Court, Ravalli County, denying his motion to toll on equitable grounds the one-year time bar on post-conviction relief.  We reverse and remand with instructions.

¶2     We review the following issue on appeal:

¶3     *Did the District Court correctly deny Davis's motion to toll on equitable grounds the one-year time bar in § 46-21-102, MCA, so that Davis could file a petition for post-conviction relief?*

## FACTUAL AND PROCEDURAL HISTORY

¶4     Davis fled Ennis in a 1991 Ford Taurus after shooting seven people in the early morning hours of June 14, 2003.  Madison County authorities immediately broadcast an "attempt to locate" Davis to all State and regional law enforcement.  Ravalli County Sheriff's Deputy Bernie Allestad (Deputy Allestad) clocked Davis's car traveling at a high rate of speed, six hours after the shooting, just south of Florence.  Deputy Allestad did not recognize Davis's car as the Taurus described in the "attempt to locate" bulletin, however, until he had pulled the car over and was reading the license plate to his dispatcher.  Deputy Allestad looked up from the license plate to discover that Davis had gotten out of his car, and was rapidly approaching Deputy Allestad's patrol car with a pistol in his hand.  Davis opened fire on Deputy Allestad, wounding him in the shoulder, and initiating a prolonged gun battle that ended with Davis again fleeing the scene with police in close pursuit.  Idaho and Montana authorities later nabbed Davis at the Montana-Idaho border after a violent, high-speed car chase.

2

¶5    The State filed an information in Ravalli County on April 1, 2004, charging Davis with various offenses committed during his gunfight with Deputy Allestad, including (1) attempted deliberate homicide, a felony, in violation of §§ 45-4-103, 45-5-102, MCA (Count I); (2) assault on a peace or judicial officer, a felony, in violation of § 45-5-210, MCA (Count II); and (3) criminal endangerment, a felony, in violation of § 45-5-207, MCA, (Count III).  Davis appeared with his trial counsel, Mark McLaverty (McLaverty), at his April 22, 2004, arraignment and entered a plea of not guilty to these charges.  Davis subsequently entered into a plea agreement with the State on September 30, 2004.  The plea agreement stated that Davis would plead guilty to all charges in the information and waive his right to withdraw the guilty plea, or to challenge his sentence via direct appeal, habeas corpus, or post-conviction relief.  The plea agreement also stated that Davis agreed that by pleading guilty to Count I he could be punished by life imprisonment without parole, or by imprisonment in the Montana State Prison for a term of not fewer than 10 years or more than 100 years.  The plea agreement stated that Davis acknowledged that the State was free to argue, and the court was free to impose, the maximum judgment allowed by the law.  The State agreed that any judgment imposed by the court on Counts II and III would run concurrently with the judgment imposed on Count I.

¶6    Davis entered his plea of guilty to all charges on September 30, 2004.  The court immediately proceeded to sentencing.  The court sentenced Davis on Count I to life imprisonment without the possibility of parole, to run consecutively with any other sentence. The court sentenced Davis to 10 years in Montana State Prison on Count II, and 10 years in

3

Montana State Prison for Count III, both to run concurrently with the sentence for Count I. Davis did not appeal his sentence.

¶7 Davis filed a *pro se* motion for appointment of counsel for post-conviction proceedings on September 28, 2005. The court issued a minute entry on October 3, 2005, stating that the court had received Davis's motion and that McLaverty remained as Davis's appointed counsel. Neither Davis nor McLaverty received notice, however, that McLaverty had been reassigned as Davis's counsel for the post-conviction proceedings. Davis later was appointed counsel, William Boggs (Boggs), through a related proceeding in Missoula County. Boggs discovered during his inquiry into Davis's case that neither Davis nor McLaverty had received notice of McLaverty's appointment, and that, in the meantime, the one-year time bar on post-conviction relief contained in § 46-21-102, MCA, had expired.

¶8 Davis filed a separate motion on March 23, 2006, through Boggs, asking the District Court to toll the one-year time bar as of the court's October 3, 2005, minute entry in light of the fact that McLaverty had never received notice that the court had reappointed him as Davis's counsel for the post-conviction proceedings. The District Court entered an order on April 11, 2006. The court noted in its order that the State had failed to file a response brief to Davis's motion. The court recognized that it usually would deem the State's failure to respond as an admission that Davis's motion should be granted. The court stated, however, that it felt compelled to raise *sua sponte* the issue of its own subject matter jurisdiction over Davis's untimely petition in light of this Court's precedent that the one-year time bar on post-conviction relief represents a "jurisdictional limit on litigation." The Court concluded

4

that a hearing should be held on Davis's motion for equitable relief. The State filed a response to Davis's motion agreeing with the court that it lacked subject matter jurisdiction to hear Davis's petition and pointing out, among other things, that Davis had waived his right to post-conviction relief when he signed the September 30, 2004, plea agreement.

¶9 The court held a hearing on May 9, 2006, regarding Davis's motion. McLaverty informed the court that he had received a copy of Davis's request for counsel, and that he had sent an inquiry to Davis regarding possible grounds for post-conviction relief. McLaverty stated, however, that he had not received notice of the court's October 3, 2005, minute entry reappointing McLaverty as counsel of record for the post-conviction proceedings. McLaverty conceded that the one-year time bar for post-conviction relief had expired in the interim. The court denied Davis's motion on the grounds that the one-year time bar was jurisdictional and could not be tolled absent some new evidence of a "constitutional violation [that] has probably resulted in the conviction of one who was actually innocent." This appeal followed.

**STANDARD OF REVIEW**

¶10 We review *de novo* a trial court's decision to deny a motion for equitable tolling where the underlying facts are undisputed. *Brambles v. Duncan*, 412 F.3d 1066, 1069 (9th Cir. 2005); *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003); *see also Chance v.*

5

*Harrison*, 272 Mont. 52, 899 P.2d 537 (1995) (reviewing *de novo* a district court's denial of summary judgment on the sole issue of equitable tolling).

**DISCUSSION**

¶11 *Did the District Court correctly deny Davis's motion to toll on equitable grounds the one-year time bar in § 46-21-102, MCA, so that Davis could file a petition for post-conviction relief?*

¶12 The State argues that the District Court has no authority to toll the one-year time bar on post-conviction relief because the time bar is a "jurisdictional limit on litigation." The State relies on *State v. Wells*, 2001 MT 55, 304 Mont. 329, 21 P.3d 610, and *Peña v. State*, 2004 MT 293, 323 Mont. 347, 100 P.3d 154, for the proposition that § 46-21-102, MCA, deprives district courts of subject matter jurisdiction over petitions for post-conviction relief that are filed more than one year after the date that the conviction became final. This Court stated in *Peña* that § 46-21-102, MCA, "is jurisdictional because it constitutes the time frame during which a district court has the 'power' or 'capacity' to 'entertain, hear[,] and determine'" a petition for post-conviction relief. *Peña*, ¶ 35.

¶13 Davis argues that our holding in *Peña* contradicts analogous federal law. The Supreme Court in *Eberhart v. United States*, 546 U.S. 12, 126 S. Ct. 403 (2005), for example, determined that Rule 33 of the Federal Rules of Criminal Procedure (Rule 33) did not represent a limit on the subject matter jurisdiction of the federal district courts. *Eberhart*, 546 U.S. at 13, 126 S. Ct. at 403. Rule 33 requires that "'[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days

6

after the verdict or finding of guilty, or within such further time as the court sets during the 7-day period.'" *Eberhart*, 546 U.S. at 13, 126 S. Ct. at 403. The Supreme Court determined that Rule 33's seven-day limit on post-trial motions represented an "inflexible claim-processing rule," rather than a rule that excludes a class of cases from a court's adjudicatory authority, or subject matter jurisdiction. *Eberhart*, 546 U.S. at 13, 126 S. Ct. at 403.

¶14 The seven-day limit that the Supreme Court deemed non-jurisdictional in *Eberhart* is indistinguishable from the one-year limit this Court deemed jurisdictional in *Peña*. Both rules prevent a party from asserting a claim that the party fails to raise within a certain amount of time. Davis also points out that the Ninth Circuit in *Calderon v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 128 F.3d 1283, 1289 (9th Cir. 1997), also has recognized that the analagous one-year time bar on federal habeas petitions is not a limit on the federal courts' subject matter jurisdiction. Our holdings in *Peña* and *Wells*, thus, appear to contradict the federal courts' interpretation of analogous federal law. *See also Amalgamated Trans. Loc. 1309 v. Laidlaw Tran. Serv.*, 435 F.3d 1140, 1147 (9th Cir. 2006) (holding that the time to petition for permission to appeal under Fed. R. App. P. 5(a) is a claim-processing rule and not jurisdictional); *In re Onecast Media, Inc.*, 439 F.3d 558, 562 (9th Cir. 2006) (holding that the ten-day rule for filing a motion for a new trial under Fed. R. Civ. P. 59 "is as much a claim-processing rule as the rule at issue in [*Kontrick v. Ryan*, 540 U.S. 443, 124 S. Ct. 906 (2004)].").

¶15 Minnesota appellate courts similarly have observed that the use of the word "jurisdictional" to refer to a statute of limitations does not carry the same meaning as it does

when used to refer to a constitutional grant of judicial power or a legislative classification of a court's power to adjudicate a class of cases. *Bode v. Minn. Dept. of Nat. Resources*, 594 N.W.2d 257, 259-60 (Minn. App. 1999) (cautioning against misuse of the term subject-matter jurisdiction), *aff'd*, 612 N.W.2d 862 (Minn. 2000). The court in *In re Civil Commitment of Giem*, 727 N.W.2d 198, 203 (Minn. App. 2007), *aff'd in part and rev'd in part*, 742 N.W.2d 422 (Minn. 2007), concluded that the statutorily prescribed time periods for conducting a hearing in a mental commitment proceeding "are rigid time prescriptions for constitutionally significant purposes, but these restrictions do not define or limit subject-matter jurisdiction." As a result, the court determined that a party could waive the time prescriptions by failing to raise the issue. *Giem*, 727 N.W.2d at 204.

¶16 We recognize that the federal courts' interpretation of federal law does not bind our interpretation of Montana Law. We likewise recognize that another state court's interpretation of its law has no binding authority over our interpretation of Montana law. Federal courts and other state courts present binding authority for this Court only "to the degree that the reasoning of the decision appears compelling." *Matter of Sinclair*, 197 Mont. 29, 32, 640 P.2d 918, 920 (1982); *see also State v. Osborne*, 2005 MT 264, 329 Mont. 95, 124 P.3d 1085 (Leaphart, J., dissenting from this Court's denial of a petition for rehearing in light of the Supreme Court's decision in *Eberhart*). This Court's decisions in *Peña* and the related cases, in contrast to the federal and other state authority cited above, lack compelling reasoning or support for the proposition that § 46-21-102, MCA, limits a district court's subject matter jurisdiction.

8

¶17 The Court in *Peña*, for example, noted that "post[-]conviction relief is not a constitutional right under Montana law, but rather a statutory right." *Peña*, ¶ 35. The Court reasoned that "[b]ecause a post[-]conviction petitioner cannot claim more rights, and, likewise, the courts cannot provide more rights, than granted by statute, the statutory rules which circumscribe the post[-]conviction process are jurisdictional in nature." *Peña*, ¶ 35. The *Peña* Court provides little analysis of the jurisdictional provisions in the Constitution or the Montana Code to support its assertion that the one-year time bar in § 46-21-102, MCA, pertains to district courts' subject matter jurisdiction. The Court instead relies on a line of cases beginning with *Petition of Gray*, 274 Mont. 1, 908 P.2d 1352 (1995), for the proposition that this Court "repeatedly" has held that the time bar in § 46-21-102, MCA, represents a "jurisdictional limit on litigation." *Peña*, ¶ 35.

¶18 The Court in *Gray* in turn held that "[t]he post-conviction statute of limitation is a jurisdictional limit on litigation and its waiver may only be justified by a clear miscarriage of justice, one so obvious that the judgment is rendered a complete nullity." *Gray*, 274 Mont. at 2, 908 P.2d at 1352. *Gray* also fails to point to any jurisdictional provision in the Montana Constitution or the Montana Code to support its conclusion that § 46-21-102, MCA, limits the subject matter jurisdiction of the district courts. Moreover, the only controlling case cited by the *Gray* court--*State v. Perry*, 232 Mont. 455, 758 P.2d 268 (1988)--contains no discussion of subject matter jurisdiction.

¶19 The Court's characterization in *Gray* of the post-conviction statute of limitation as "jurisdictional" contrasts with our recent decision in *Miller v. Eighteenth Judicial Dist.*

9

*Court*, 2007 MT 149, ¶¶ 44-46, 337 Mont. 488, ¶¶ 44-46, 162 P.3d 121, ¶¶ 44-46. We concluded in *Miller* that a provision requiring the State to notify the defendant of its intent to seek the death penalty within 60 days of the filing of the information "is, necessarily, a categorical time prescription and not a jurisdictional provision." *Miller*, ¶ 46. We determined that a prosecutor's failure to comply with the 60-day time prescription does not create "a jurisdictional defect" that precludes the State from seeking the death penalty and precludes the district court from imposing the death penalty as a sentence. *Miller*, ¶ 46. Like other time prescriptions, the rule simply "assure[s] relief" to a defendant who properly raises it, but it does not compel the same result if the defendant forfeits it. *Miller*, ¶ 46.

¶20 The Court in *Peña* and the related cases interpreted the effect of the post-conviction statutory time bar in terms of the district courts' subject matter jurisdiction. *Peña*, ¶ 30; *Osborne*, ¶ 12. We held in *Peña* that a party never waives the post-conviction statutory time bars because they "constitute[] the time frame during which a district court has the power or capacity to entertain, hear and determine petitions for post[-]conviction relief." *Peña*, ¶ 35 (internal quotation marks omitted); *accord Osborne*, ¶ 17. We repeatedly have held that a party never waives subject matter jurisdiction and that a party or the court may raise subject matter jurisdiction at any time during the course of a proceeding. *E.g. State v. Walker*, 2007 MT 205, ¶ 35, 338 Mont. 529, ¶ 35, 167 P.3d 879, ¶ 35; *Stanley v. Lemire*, 2006 MT 304, ¶¶ 30-32, 334 Mont. 489, ¶¶ 30-32, 148 P.3d 643, ¶¶ 30-32; *In re Marriage of Miller*, 259 Mont. 424, 426-27, 856 P.2d 1378, 1380 (1993). Indeed, we have stated that subject matter

jurisdiction "can never be forfeited or waived, nor can it be conferred by the consent of a party." *Miller*, ¶ 44.

¶21    The State, by urging this Court to construe the time prescription set forth in § 46-21-102, MCA, as a limit on district courts' subject matter jurisdiction, asserts that a petitioner may dictate a court's subject matter jurisdiction on the timeliness of his petition. The Supreme Court has described subject matter jurisdiction, however, as authority that "cannot be expanded to account for the parties' litigation conduct . . . ." *Kontrick*, 540 U.S. at 456, 124 S. Ct. at 916. The State fails to identify a provision in either the Montana Constitution or the Montana Code that allows this Court to hinge a district court's "power" to entertain a post-conviction petition on the timeliness of the petition.

¶22    Davis argues that the holding in *Peña* arose "simply out of linguistic inadvertence." He contends that the Court mistakenly has inferred limits on the subject matter jurisdiction of the district courts from the casual use of the word "jurisdictional" in our precedent. Recent decisions in the United States Supreme Court echo Davis's concern. The Supreme Court recently noted in *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511, 126 S. Ct. 1235, 1242 (2006), for example, that the Supreme Court and other courts have been less than meticulous with the use of the term "jurisdiction." Similarly, in reversing the Seventh Circuit's lower decision, the Supreme Court in *Eberhart* admitted that imprecise use of the term "jurisdiction" in Supreme Court precedent in large part had caused the Seventh Circuit's confusion. *Eberhart*, 546 U.S. at 19, 126 S. Ct. at 407.

11

¶23     We agree with Davis that *Gray*, *Peña*, and *Wells* represent cases where this Court also has been less than meticulous in its use of the term "jurisdiction." *See Arbaugh*, 546 U.S. at 511, 126 S. Ct. at 1242. We conclude that the statutory time-bar set forth in § 46-21-102, MCA, does not circumscribe a district court's subject matter jurisdiction. Section 46-21-102, MCA, constitutes a rigid, categorical time prescription that governs post-conviction petitions. *See Miller*, ¶ 48. We must reverse *Gray*, *Peña*, *Wells*, and other cases to the extent they have held that the Legislature limited district courts' subject matter jurisdiction by codifying a one-year time bar on post-conviction relief at § 46-21-102, MCA. We also must reverse the District Court's determination that the one-year time bar in § 46-21-102, MCA, limits its subject matter jurisdiction over Davis's motion to toll the one-year time bar on equitable grounds.

¶24     We hasten to add, however, that nothing in our ruling precludes a court from raising, *sua sponte*, the timeliness of the petition. For example, the Court in *Day v. McDonough*, 547 U.S. 198, 209, 126 S. Ct. 1675, 1684 (2006), concluded that district courts "are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition." The Court stressed that nothing compels a trial court "to double-check the State's math." *Day*, 547 U.S. at 209-10, 126 S. Ct. at 1684. Like *Day*, we also stress that a district court's decision to raise the timeliness of a petition on its own initiative invokes due process considerations. The court must afford the parties fair notice and an opportunity to present their positions before acting on its own initiative to dismiss a petition as untimely. *Day*, 547 U.S. at 210, 126 S. Ct. at 1684. The court also must determine whether "'the interests of

12

justice would be better served' by addressing the merits or by dismissing the petition as time barred." *Day*, 547 U.S. at 210, 126 S. Ct. at 1684.

¶25 Although the District Court provided alternative rationales for its ruling, it ultimately decided Davis's motion solely on the basis that it lacked subject matter jurisdiction. In light of our decision and its changes to the law regarding the one-year time bar contained in § 46-21-102, MCA, we deem it appropriate to remand this matter to allow the District Court to consider in the first instance Davis's motion to toll on equitable grounds the one-year time bar contained in § 46-21-102, MCA. The District Court must determine whether the failure to toll on equitable grounds would work "'a clear miscarriage of justice, one so obvious'" that the imposition of the time bar would compromise the integrity of the judicial process. *State v. Redcrow*, 1999 MT 95, ¶ 34, 294 Mont. 252, ¶ 34, 980 P.2d 622, ¶ 34 (quoting *Gray*, 274 Mont. at 1, 908 P.2d at 1352).

¶26 Reversed and remanded.

/S/ BRIAN MORRIS

We Concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JOHN WARNER

Justice Jim Rice, dissenting.

13

¶27 While I understand the Court's inclination to follow the lead of the U.S. Supreme Court in distinguishing claim processing rules from jurisdictional time limits, citing *Eberhart*, I disagree with the Court's conclusion that the one year time-bar set forth in the Montana post-conviction statute lacks jurisdictional effect and can be ignored or forfeited.

¶28 The central premise of the Court's opinion is that our post-conviction cases such as *Peña*, *Gray*, *Wells,* and *Osborne* were decided "in terms of the district courts' subject matter jurisdiction." *See* Opinion, ¶ 20. However, I believe this is a misunderstanding of our precedent. The term "subject matter jurisdiction" was not mentioned nor addressed in those cases. The word "jurisdiction" was used therein to convey the nature and effect of the contours upon post-conviction relief enacted by the Legislature, with the conclusion being that the district court lacked the authority to grant relief outside those statutory boundaries. As we stated, "the statutory rules which circumscribe the postconviction process are *jurisdictional in nature*." *Peña*, ¶ 35 (emphasis added). Further, we have recently explained that "jurisdictional in nature" does not necessarily equate to "subject matter jurisdiction."

¶29 In *Molnar v. Public Service Commission*, 2008 MT 49, 341 Mont. 420, 177 P.3d 1048, we reviewed an appeal to the district court from an agency decision which had been filed beyond the 30-day statutory appeal period. We affirmed the dismissal of the appeal, reasoning that "the District Court was without jurisdiction . . . to entertain the request for judicial review," *Molnar*, ¶ 9, but further elaborated on the principle at issue here:

> Of course, the District Court possessed general subject matter jurisdiction to review the agency decision, but did not have authority "jurisdictional in nature," [citing *In re McGurran*, 1999 MT 192, ¶ 12, 295 Mont. 357, ¶ 12, 983

14

P.2d 968, ¶ 12] from the Legislature to entertain a petition for review filed beyond the time limit provided in the governing statutes.

*Molnar*, ¶ 9. This distinction is commonly recognized. *See State v. Moore*, 225 S.W.3d 556, 568 (Tex. Crim. App. 2007) ("under some circumstances the lack of 'authority' in a trial court, as distinguished from its 'jurisdiction,' can render its purported actions 'void.'").

¶30 While we may well have been "less than meticulous," as the Court notes, in our use of the term "jurisdiction" in these cases, that does not abrogate the jurisdiction-like principles at work which required the outcome therein. Whether we label it "jurisdiction" or some other term, a court must have authority to act upon the particular matter before it. We have so held:

> "Jurisdiction is the power to hear and determine the particular action or proceeding *as well as to make such orders and render such judgment therein as the law authorizes* in the class of actions or proceedings to which it belongs."

*State ex rel. Johnson v. District Court*, 147 Mont. 263, 267, 410 P.2d 933, 935 (1966) (quoting *State ex rel. Lay v. District Court*, 122 Mont. 61, 70, 198 P.2d 761, 766 (1948)) (emphasis added).

¶31 Montana districts courts do indeed have subject matter jurisdiction to entertain post-conviction petitions—they have "the power to hear and determine" post-conviction matters. *Johnson*, 147 Mont. at 267, 410 P.2d 935. However, courts must also have the power or authority to "make such orders and render such judgments therein as the law authorizes." *Johnson*, 147 Mont. at 267, 410 P.2d 935. Although the Court wants to avoid over-use of the word "jurisdiction," and rightfully so, principles of authority nonetheless exist and must be

15

recognized, whatever we choose to call them. Here, I do not believe the District Court had authority to act on Davis' petition, because it was filed beyond the one year time-bar.

¶32 That leads to my second disagreement, that the one-year time-bar in § 46-21-102, MCA, is merely a "claim processing rule," as intimated by the Court by its discussion and reliance on the United States Supreme Court's decision in *Eberhart*. *See* Opinion, ¶¶ 13, 22. "Claim processing rules" are a creation of the federal courts and arise from unique federal experience: the jurisdiction of Article III courts is determined by Congress. To distinguish judicially promulgated process rules from congressional jurisdictional mandates, the federal courts have designated the former as "claim processing rules" which are not jurisdictional. As appropriate as this notion may be for the federal courts, to import it wholesale into our law overlooks the peculiar basis for such rules, which does not exist in Montana law.

¶33 Further, the post-conviction time-bar is clearly distinguishable from the rules at issue in the federal cases relied upon by the Court. The *Eberhart* decision addressed Rule 33 of the Federal Rules of Criminal Procedure, which required a motion for new trial to be filed within seven days after a verdict. Interestingly, the Supreme Court in *Eberhart* did not explain why it thought Rule 33 was a claim processing rule. It simply stated that the Rule was similar to Fed. R. Bankr. P. 4004(a), which it had determined to be a claim processing rule in *Kontrick v. Ryan*, 540 U.S. 443, 124 S. Ct. 906 (2004) ("After *Kontrick,* it is difficult to escape the conclusion that Rule 33 motions are similarly nonjurisdictional." *Eberhart*, 546 U.S. at 19, 126 S. Ct. at 407). Thus, to understand the reasoning of the federal authority which determined that these rules were "claim-processing rules," one must turn to *Kontrick*.

16

¶34    *Kontrick* addressed a bankruptcy rule which provided a time period in which a debtor could object to a creditor's complaint contesting the debtor's discharge. *Kontrick*, 540 U.S. at 446, 124 S. Ct. at 910. The *Kontrick* Court first explained the source of the rule in question: "The time constraints . . . are contained in bankruptcy rules prescribed by the United States Supreme Court for 'the practice and procedure in cases under Title 11.'" It then noted, as a general legal principle, that "'[i]t is axiomatic' that such rules 'do not create or withdraw federal jurisdiction'" but, more specifically, that the Bankruptcy Rules themselves clearly stated that the Rules "'shall not be construed to extend or limit the jurisdiction of the courts.'" *Kontrick*, 540 U.S. at 453, 124 S. Ct. at 914. It noted that the Court had previously held in *Schacht v. United States*, 398 U.S. 58, 90 S. Ct. 1555 (1970), that the Rules "adopted by the Court for the orderly transaction of its business are not jurisdictional." *Kontrick*, 540 U.S. at 454, 124 S. Ct. at 914. Critically, the Court emphasized that "[n]o statute, however, specifies a time limit for filing a complaint objecting to the debtor's discharge." *Kontrick*, 540 U.S. at 448, 124 S. Ct. at 911.[1]

¶35    The distinctions between the statutory time-bar and the procedural rules at issue under the cited federal authority are significant. We are not dealing here with a "rule" adopted by the court for the "practice and procedure" in cases before the district court. We have here no companion "rule" explaining that these "rules" as a whole "do not create or withdraw" jurisdiction. Nor do we have a long line of cases declaring that the time-bar at issue is

---

[1] Notably, the Seventh Circuit, whose interpretation of the rule was upheld by the Supreme Court in *Kontrick*, had the benefit of a long line of federal cases previously declaring the

nonjurisdictional—indeed, we have a long line of cases declaring just the opposite. And, most critically, in contrast to the federal cases, we <u>do</u> have a statute which "specifies a time limit for filing" a petition. Because the time-bar is a statutory restriction upon post-conviction relief, it is fundamentally different from the rules at issue in the cases relied upon by the Court.

¶36 Further, as the Court notes, the *Kontrick* Court explained that a jurisdictional rule "cannot be expanded to account for the parties' litigation conduct," while a claim processing rule "can . . . be forfeited if the party asserting the rule waits too long to raise the point." *Kontrick*, 540 U.S. at 456, 124 S. Ct. at 916. My reading of § 46-21-102, MCA, provides no indication that the Legislature intended the time-bar to be "expanded to account for the parties' litigation conduct" or that it can be forfeited if ignored. The time-bar, reduced several years ago by the Legislature from five years to one year, reflects the desire for a certain, mandatory time limit for the original filing of petitions.

¶37 I fear the Court's decision may be ill-conceived on other grounds as well. This holding could engender various claims seeking equitable release from the time-bar. Discarding a clear legislative contour of the post-conviction process may well convince the federal courts that the time-bar is no longer a firmly established and regularly followed state practice necessary to prevent subsequent federal court review of federal constitutional claims. *See Barr v. Columbia,* 378 U.S. 146, 149, 84 S. Ct. 1734, 1736 (1964) ("[s]tate

---

subject rule as "not jurisdictional." *Kontrick*, 540 U.S. at 451, 124 S. Ct. at 913.

18

procedural requirements which are not strictly or regularly followed" will not be honored in later federal review).

¶38 As we have held in our previous post-conviction cases, and in similar contexts in other cases, I would likewise conclude here that, while not a limitation on subject matter jurisdiction, the one-year time-bar in the post-conviction statute is "jurisdictional in nature," requiring dismissal of the petition. *Peña*, ¶ 35; *Molnar*, ¶ 9; *McGurran*, ¶ 12. I would therefore affirm.


/S/ JIM RICE


Chief Justice Karla M. Gray joins in the dissenting opinion of Justice Rice.


/S/ KARLA M. GRAY