JUSTICE MORRIS
delivered the Opinion of the Court.
¶1 BNSF Railway Company (BNSF) appeals from the judgment of the First Judicial District Court, Lewis and Clark County, dismissing BNSF’s petition for judicial review. We reverse and remand.
¶2 We review the following issue on appeal:
¶3 Does the 14-day filing deadline in §49-2-505(3)(c), MCA, deprive a district court of jurisdiction over matters arising between the parties after the deadline has expired?
FACTUAL AND PROCEDURAL BACKGROUND
¶4 The Montana Human Rights Bureau determined that BNSF unlawfully had discriminated against Chad Cringle (Cringle) when it denied him employment based solely on a statistical analysis of his height and weight ratio. BNSF appealed the decision to the Human Rights Commission (Commission) several days after the 14-day filing deadline of § 49-2-505(3)(c), MCA, had expired. Both the Commission and the District Court have refused to hear BNSF’s reasons for missing the filing deadline based on their conclusion that § 49-2-505(3)(c), MCA, has removed their subject matter jurisdiction.
¶5 BNSF conditionally had offered Cringle employment as a track laborer. BNSF later denied Cringle employment after reviewing his height and weight. BNSF determined that Cringle presented a risk of *22 harm to himself or others based on a statistical analysis of Cringle’s height and weight. Cringle filed his complaint charging BNSF with unlawful discrimination in July 2008.
¶6 The Human Rights Bureau found reasonable cause to believe that unlawful discrimination had occurred and forwarded the complaint for a contested case proceeding. The Human Rights Bureau’s hearing officer awarded summary disposition in favor of Cringle in May 2009. The hearing officer entered a final decision awarding damages to Cringle on September 2, 2009. The hearing officer also issued and served notice of the decision on September 2, 2009.
¶7 BNSF filed a notice of appeal and a request for an extension of time with the Commission on September 22,2009. Cringle objected to BNSF’s appeal and request for an extension of time. Cringle argued that the expiration of the 14-day filing deadline of § 49-2-505(3)(c), MCA, had rendered final the agency’s decision. Cringle further argued that the filing deadline created a jurisdictional bar and deprived the Commission of authority to entertain BNSF’s untimely appeal. The Commission denied BNSF’s motion for an extension of time and dismissed BNSF’s appeal. The Commission did not hear evidence regarding BNSF’s reasons for missing the deadline. The Commission did not evaluate whether BNSF had good cause to support its motion and appeal.
¶8 BNSF filed a petition for judicial review in district court on November 2, 2009. BNSF argued that the Commission had authority to extend the 14-day filing deadline and had authority to hear BNSF’s reasons why an extension should have been granted. BNSF acknowledged that it had received the hearing officer’s final decision on September 3,2009. BNSF mentioned in its brief that it had missed the appeal deadline due to its staff misfiling the decision or failing to calendar the appeal deadline.
¶9 Cringle moved to dismiss BNSF’s petition for lack of jurisdiction and failure to state a claim for which relief could be granted pursuant to M. R. Civ. P. 12(b)(1) and (6). Cringle relied on § 49-2-505(3)(c), MCA, to support his argument that the hearing officer’s decision had become “final” and “not appealable to the district court” when BNSF missed the 14-day filing deadline. The District Court agreed with Cringle, concluded that it lacked subject matter jurisdiction, and dismissed BNSF’s petition.
¶10 Cringle then filed an M. R. Civ. P. 60(b) motion for relief on March 23, 2010. Cringle advised the court that though it did not have jurisdiction to set aside the Commission’s dismissal of BNSF’s appeal, *23 it retained jurisdiction to enforce the hearing officer’s decision that had granted damages to Cringle and to award attorney fees. The court issued a nunc pro tunc order on March 29, 2010, to enforce Cringle’s award of damages and determine the amount of attorney fees that BNSF owed to Cringle. The court entered judgment for Cringle on April 9, 2010. BNSF now appeals the court’s conclusion that § 49-2-505(3)(c), MCA, deprived the District Court of jurisdiction.
STANDARD OF REVIEW
¶11 We review for correctness a district court’s review of an administrative agency’s decision. N. Cheyenne Tribe v. Mont. Dept, of Envtl. Quality, 2010 MT 111, ¶ 19, 356 Mont. 296, 234 P.3d 51. We review for correctness a district court’s conclusions of law. Id. We review de novo a district court’s determination regarding its subject matter jurisdiction. Koeplin v. Crandall, 2010 MT 70, ¶ 7, 355 Mont. 510, 230 P.3d 797.
DISCUSSION
¶12 Does the 14-day filing deadline in §49-2-505(3)(c), MCA, deprive a district court of jurisdiction over matters arising between the parties after the deadline has expired?
¶13 BNSF argues that § 49-2-505(3)(c), MCA, does not place a jurisdictional limitation on the district court to entertain a petition for judicial review. Cringle responds that the legislature properly circumscribed the court’s jurisdiction by enacting § 49-2-505(3)(c), MCA. We agree with BNSF. The legislature does not deprive the courts of subject matter jurisdiction when it enacts filing or notice deadlines. We have required accurate use of the term “jurisdiction” in our more recent history. Davis v. State, 2008 MT 226, ¶ 23, 344 Mont. 300, 187 P.3d 654; Miller v. Eighteenth Jud. Dist. Ct, 2007 MT 149, ¶ 43, 337 Mont. 488, 162 P.3d 121; State v. Clark, 2008 MT 317, ¶ 21, 346 Mont. 80, 193 P.3d 934 (Nelson & Morris, JJ., concurring); Steab v. Luna, 2010 MT 125, ¶ 24, 356 Mont. 372, 233 P.3d 351. We have emphasized the importance of not confusing the situation of a claimant’s untimely filing with the district court’s subject matter jurisdiction. See Miller, ¶¶ 43-44; Davis, ¶¶ 19, 22-23.
¶14 We have concluded that “categorical time prescriptions” do not “withdraw” or “circumscribe” the district courts’ subject matter jurisdiction. Miller, ¶ 45; Davis, ¶ 23. In Davis, we overruled “Gray, Pena, Wells, and other cases to the extent they have held that the Legislature limited district courts’ subject matter jurisdiction” by *24 enacting statutory time bars. Davis, ¶ 23. We since have consistently confirmed that statutory filing deadlines do not affect a district court’s subject matter jurisdiction. State v. Johnston, 2008 MT 318, ¶¶ 18-19, 346 Mont. 93, 193 P.3d 925; Cobb v. Saltiel, 2009 MT 171, ¶ 33-34, 350 Mont. 501, 210 P.3d 138. See also Lorang v. Fortis Ins. Co., 2008 MT 252, ¶¶ 58-62, 345 Mont. 12, 192 P.3d 186; Clark, ¶¶ 19-32 (Nelson & Morris, JJ., concurring).
¶15 The Montana Constitution establishes the subject matter jurisdiction of the district courts. Mont. Con. art. VII, § 4; Miller, ¶ 45. Article VII, Section 4(1) provides that district courts have “original jurisdiction [...] in all civil matters and cases at law and in equity.” Article VII, Section 4(2) also provides that “[t]he legislature may provide for direct review by the district court of decisions of administrative agencies.” Subject matter jurisdiction involves the court’s fundamental authority to hear and adjudicate cases or proceedings. Lorang, ¶ 57 (citations omitted). Subject matter jurisdiction “can never be forfeited or waived, nor can it be conferred by the consent of a party.” Davis, ¶ 20 (quoting Miller, ¶ 44).
¶16 We have called procedural time bars by several names. We characterized the one-year time bar for post-conviction relief in § 46-21-102, MCA, as a “rigid, categorical time prescription.” Davis, ¶ 23. We also described the judicially-enacted 60-day time bar in Miller as “a categorical, but nonjurisdictional, time prescription.” Miller, ¶ 48. We have recognized the federal courts’ use of the term “claim-processing rule” to describe procedural time bars. Miller, ¶ 44 (referencing Kontrick v. Ryan, 540 U.S. 443, 454-56, 124 S. Ct. 906, 915-16 (2004)); Davis, ¶ 13 (referencing Eberhart v. U.S., 546 U.S. 12, 13, 126 S. Ct. 403, 403 (2005). We also have referred to such a deadline as a “time limit,” “statute of limitation,” “time bar,” “procedural bar,” “rigid statutory prescription,” “period of limitation,” “notice requirement,” or “procedural requirement Molnar v. Mont. Pub. Serv. Commn., 2008 MT 49, ¶ 9, 341 Mont. 420, 177 P.3d 1048; State v. Redcrow, 1999 MT 95, ¶¶ 34, 41, 294 Mont. 252, 980 P.2d 622; Johnston, ¶ 19; Rohlfs v. Klemenhagen, LLC, 2009 MT 440, ¶¶ 29, 33, 354 Mont. 133, 227 P.3d 42.
¶17 These “periods of limitation” are scattered throughout the Montana Code Annotated and are “too numerous to mention.” Rohlfs, ¶ 33 n. 2. We have distinguished these “categorical time prescriptions” from “jurisdictional provisions” that “delineat[e] the classes of cases (subject-matter jurisdiction) ... falling within a court’s adjudicatory authority.” Miller, ¶ 43 (citing Kontrick, 540 U.S. at 455, 124 S. Ct. at *25 915). Regardless of the label, none of the judicially or statutorily created procedural deadlines deprive a district court of subject matter jurisdiction. Miller, ¶ 45; Davis, ¶ 23; Johnston, ¶ 21.
¶18 Procedural time bars are affirmative defenses that are subject to forfeiture and waiver. Marias Healthcare Serv., Inc. v. Turenne, 2001 MT 127, ¶ 9, 305 Mont. 419, 28 P.3d 491; M. R. Civ. P. 8(c); Miller, ¶ 46; Clark, ¶ 25 (Nelson & Morris, JJ., concurring); Zipes v. Trans World Airlines, 455 U.S. 385, 393, 102 S. Ct. 1127, 1132 (1982). Generally, a litigant who properly raises a procedural time bar may expect the time bar to be applied “regularly and consistently.” Redcrow, ¶ 34; Forsythe v. Leydon, 2004 MT 327, ¶ 9, 324 Mont. 121, 102 P.3d 25 (stating that “a firm time-limit advances the cause of justice by bringing predictability to our process”). Procedural time bars, like the 14-day filing deadline in § 49-2-505(3)(c), MCA, remain subject to constitutional review and equitable principles. See e.g. Rohlfs (reviewing the constitutionality of a 180-day notice requirement); Davis, ¶ 25 (providing that the district court may consider a motion to toll a statutory filing deadline on equitable grounds); Lozeau v. GEICO Indent. Co., 2009 MT 136, 350 Mont. 320, 207 P.3d 316 (applying the doctrine of equitable tolling to a three-year statute of limitations); Salway v. Arkava, 215 Mont. 135, 140, 695 P.2d 1302, 1305 (1985) (stating that “[c]ourts of general jurisdiction have from the beginning possessed the power to entertain equitable actions to set aside judgments”).
¶19 Subsection 49-2-505(3)(c), MCA, provides that “the hearings officer shall issue a decision” after a hearing. Subsection 49-2-505(4), MCA, states that “[a] party may appeal a decision of the hearings officer by filing an appeal with the commission within 14 days after the issuance of the notice of decision of the administrative hearing.” Subsection 49-2-505(3)(c), MCA, further provides that “[i]f the decision is not appealed to the commission within 14 days as provided in subsection (4), the decision becomes final and is not appealable to district court.”
¶20 The 14-day filing deadline set out in § 49-2-505(3)(c), MCA, does not “withdraw,” “circumscribe,” “limit,” or “affect” the District Court’s subject matter jurisdiction. Miller, ¶ 45; Davis, ¶ 23; Johnston, ¶ 21; Cobb, ¶ 34. This statutory filing deadline ultimately may bar BNSF from a full appeal on the merits, but it does not deprive the District Court of subject matter jurisdiction over BNSF’s petition for review in District Court. The District Court possesses jurisdiction to hear the parties’ dispute and adjudicate their issues. The District *26 Court possesses jurisdiction to consider the parties’ arguments for the application of equitable doctrines and constitutional principles. See § 2-4-702, MCA.
¶21 The Dissent aggrandizes today’s decision with claims that the Court has “breathtakingly [...] legislated a ‘good cause’ exception to every procedural deadline the Legislature has ever enacted.” We agree that this decision resounds with separation of power considerations, but disagree that we have “violate[d] separation of powers,” struck “down the Legislature’s fundamental power,” or “violate[d] this Court’s constitutional duty.” Stripped of its grandiose language, the Dissent contains no response to any of the caselaw on which the decision rests. Where the Dissent has relied on legal authority, the Dissent has relied on clearly distinguishable caselaw.
¶22 The Dissent’s concern regarding the separation of powers further appears misplaced alongside the Dissent’s concession that the District Court incorrectly used “jurisdictional language” and erroneously concluded that it lacked jurisdiction to entertain BNSF’s appeal. Dissent, ¶¶ 36, 42. The Dissent falls into the linguistic trap identified by this Court’s recent opinions, see Opinion, ¶ 13, when it attempts to distinguish “this jurisdiction” with the court’s authority. Compare Dissent, ¶ 32 with ¶ 34.
¶23 The Dissent relies on a reference guide’s interpretation of Nye v. Department of Livestock for the proposition that “only the legislature may validly provide for judicial review of agency decisions.” Nye v. Dept, of Livestock, 196 Mont. 222, 226, 639 P.2d 498, 500 (1982). Nye involved a terminated employee’s filing of a petition for judicial review in district court. Id. at 223, 639 P.2d at 499. The employee argued that the district court had jurisdiction to hear the claim for wrongful termination based on broad language in an employment policy manual. Id. at 225, 639 P.2d at 500. The Court in Nye concluded that the policy manual constituted an administrative regulation that could not confer a right to appeal in district court. Id. at 226, 639 P.2d at 500. Read in context, the assertion that “only the legislature may validly provide for judicial review of agency decisions” clearly responds to the employee’s argument that the policy manual permitted her to sue directly in district court. Id., 639 P.2d at 500. The Dissent ignores this critical distinction.
¶24 The Dissent also relies on Molnar and In re McGurran, 1999 MT 192, 295 Mont. 357, 983 P.2d 968. Though disguised as a separation of powers concern, the Dissent advocates for the return to a distinction between “jurisdiction” and “authority jurisdictional in nature” that the *27 Court made in Molnar, ¶ 9. See Dissent, ¶¶ 36, 38. This distinction, insofar as it is even possible to distinguish jurisdiction into separate meanings, has been identified as a source of confusion for our courts and federal courts. See Miller, ¶¶ 43-44; Davis, ¶¶ 19,22-23. We refuse to promote this confusing distinction here, just as we have in Davis, Johnston, Miller, Cobb, and Clark. We abandoned the approach taken in Molnar and In re McGurran when we decided Davis. Compare Davis, ¶ 23 with Davis, ¶ 29 (Rice, J., dissenting).
¶25 We finally address the Dissent’s unfounded implication that our decision restricts a district court’s authority to enforce procedural statutes sua sponte. Dissent, ¶ 41. As we emphasized in Davis, ¶ 24, and recently confirmed in Spencer v. Beck, 2010 MT 256, ¶ 16, 358 Mont. 295, 245 P.3d 21, a court can raise a procedural time bar sua sponte so long as the court takes due process precautions, including fair notice and providing an opportunity for the parties to present their positions.
¶26 The Dissent also presents a laundry list of statutory “good cause” exceptions to statutory deadlines. Dissent, ¶ 38. The Dissent apparently believes that the existence of these statutory exceptions somehow supports its conclusion that courts cannot hear and determine whether a litigant has good cause to justify the missing of a procedural bar. Under the Dissent’s approach, a court would be required to deny BNSF’s petition for judicial relief even if BNSF had missed the deadline because a tornado that struck its counsel’s office had destroyed the entire case file. Under the Dissent’s approach, the district court would “properly exercise subject matter jurisdiction” simply by tallying the days that have passed and issuing a denial of judicial review without a hearing, regardless of whether good cause existed. Dissent, ¶¶ 32, 36. Article VII, Section 4(2) of the Montana Constitution does not so diminish and automate the court’s role.
¶27 BNSF requests that this Court remand to the Commission to hear its motion for an extension of the 14-day filing deadline in the first instance. BNSF cites to M. R. Civ. P. 6(b) and Admin. R. M. 24.9.113 and Admin. R. M. 24.9.315 in support of its argument that the Commission had authority to extend the filing deadline. We disagree. Subsection 49-2-505(4), MCA, permits BNSF to have appealed the hearing examiner’s decision to the Commission only within the 14-day filing deadline. Only the District Court had authority to grant BNSF equitable relief from the procedural bar of § 49-2-505(4), MCA, after the appeal deadline had expired. See §§ 2-4-702, -704, MCA.
*28 ¶28 On remand, the District Court shall hear BNSF’s alleged good cause that would justify its motion for an extension of time. If the District Court finds good cause, it shall order the Commission (1) to grant BNSF’s motion for an extension of time, and (2) to hear and determine the merits of BNSF’s appeal. If the District Court concludes that BNSF’s motion lacks good cause, it shall deny the motion for an extension of time and resolve any other outstanding matters presented by BNSF’s petition.
¶29 Reversed.
CHIEF JUSTICE McGRATH, JUSTICES LEAPHART and NELSON concur.