JUSTICE RICE,
dissenting.
¶30 In my view, the Court has misapplied jurisdictional principles, misinterpreted the Constitution, and failed to follow our holdings. Worse, the Court has acted beyond its own constitutional powers by legislating a “good cause” exception to virtually every procedural bar passed by the Legislature. In its zeal to diminish the effect of procedural bars, the Court has gone too far. I strongly dissent.
¶31 The Court states repeatedly that legislatively enacted filing deadlines do not deprive the courts of subject matter jurisdiction. See Opinion, ¶¶ 13, 14,17, 20. In fact, virtually the entire analysis of the Opinion is dedicated to this proposition. See Opinion, ¶¶ 13-20. While I generally agree with this proposition-that legislative acts may improperly impinge the jurisdiction of the courts-that did not happen here. The Court’s jurisdictional analysis is insufficiently nuanced and misses the real issue in this case-the express constitutional authority given to the Legislature.
¶32 The District Court clearly had subject matter jurisdiction to entertain BNSF’s appeal from the agency decision and to address the issues raised therein. We have previously explained this concept. Molnar v. Mont. Pub. Serv. Commn., 2008 MT 49, ¶ 9, 341 Mont. 420, 177 P.3d 1048 (“the District Court possessed general subject matter jurisdiction to review the agency decision ....”); see also In re McGurran, 1999 MT 192, 295 Mont. 357, 983 P.2d 968. The District Court had jurisdiction to determine whether BNSF’s appeal was validly filed, whether the cross-petitions seeking enforcement of the agency decision were valid, and whether an award of attorney fees to the prevailing party in this discrimination proceeding was appropriate pursuant to § 49-2-505(8), MCA. Nothing the Legislature did deprived the court of this jurisdiction. While the District Court used incorrect language in denying relief to BNSF for “lack of jurisdiction,” a phrase *29 which, unfortunately, courts are wont to employ, it nonetheless had jurisdiction to do exactly what it did, and reversal is not necessary.
¶33 However, the Court reverses on the ground that the Legislature’s enactment of a filing deadline and a limitation upon appeals made directly from a hearing officer to the courts impermissibly conflicts with a district court’s subject matter jurisdiction. For the following reasons, I believe there is no such conflict in this case.
¶34 First, the Constitution has granted the Legislature express authority over appeals to the district courts from agency determinations. Right within Article VII, Section 4, entitled “District court jurisdiction,” the Constitution provides that “[t]he legislature may provide for direct review by the district court of decisions of administrative agencies.” Mont. Const, art. VII, § 4(2). The Court quotes this provision in passing, see Opinion, ¶ 15, but fails to discuss it or acknowledge that it has any effect. Further, the Court fails to advise that we have previously interpreted it contrary to the Court’s holding today. Placed within the “District court jurisdiction” section of the Constitution, the provision expressly grants authority over agency appeals to the Legislature. As one commentary has explained this provision of the Constitution:
This section establishes the basic trial and appellate jurisdiction for district courts ....
As to appellate jurisdiction, the principal litigation concern has been review of administrative action. The Montana Supreme Court has emphasized the legislative role in providing for administrative review. Only the legislature may provide for judicial review of administrative actions (Nye v. Department of Livestock, 1982), and the legislature may deny or restrict the right of review from administrative decisions to a particular court.
Larry M. Elison & Fritz Snyder, The Montana State Constitution: A Reference Guide 144-45 (Greenwood Press 2001) (emphasis added). The comment correctly cites our decision in Nye v. Department of Livestock, 196 Mont. 222, 639 P.2d 498 (1982), where we held: “In Montana, only the legislature may validly provide for judicial review of agency decisions. ‘The legislature may provide for direct review by the district court of decisions of administrative agencies.’ Mont. Const, art. VII, § 4, cl. 2. A right of judicial review cannot be created by agency fiat.” Nye, 196 Mont, at 226, 639 P.2d at 500. We held similarly in Molnar, ¶ 7: “We have held that only the Legislature may validly provide for judicial review of agency decisions. Nye v. Dept. of Livestock, 196 Mont. *30 [at] 226, 639 P.2d [at] 500). As such, a court’s authority to review administrative rulings is constrained by statute.”
¶35 Pursuant to its constitutional authority, the Legislature enacted the appeal provisions at issue in this case, particularly, § 49-2-505, MCA. Subsection (4) provides that “[a] party may appeal a decision of the hearings officer by filing an appeal with the commission within 14 days after the issuance of the notice of decision of the administrative hearing.” Section 49-2-505(4), MCA. Then, critically, subsection (3)(c) provides:
If the decision is not appealed to the commission within 14 days as provided in subsection (4), the decision becomes final and is not appealable to district court.
Section 49-2-505(3)(c), MCA (emphasis added). It should first be noted that, by the plain words of this provision, the Legislature made no direct effort to limit the subject matter jurisdiction of the district court-in other words, to declare that district courts lacked jurisdiction to entertain appeals from state agencies. Rather, it exercised its constitutional authority to govern agency appeals by prohibiting parties from “leapfrogging” over the Human Rights Commission and seeking direct review by a district court if they have failed, first, to timely appeal to the Human Rights Commission. If a party fails to appeal from a hearing officer’s decision within 14 days, the Legislature has declared the hearing officer’s decision is to be “final” and nonappealable.
¶36 Within this statute, the Legislature utilized the subject matter jurisdiction of the district court by authorizing appeals to the district court after the Commission has rendered a decision. Section 49-2-505(9), MCA. It further utilized that jurisdiction by permitting district courts to award attorney fees and costs to a prevailing party following an agency decision. Section 49-2-505(8), MCA. This case played out exactly as the statutes envisioned. Despite its incorrect use of jurisdictional language, the District Court had jurisdiction to entertain BNSF’s appeal and to determine whether, pursuant to the statutory provisions, BNSF had the right to proceed. Determining that BNSF’s appeal was in violation of statute, the District Court properly denied the appeal. Also pursuant to its subject matter jurisdiction, it ordered the agency decision, declared “final” by statute, to be enforced and granted attorney fees to Cringle.
¶37 However, the Court, which apparently sees only the potential for inequity in the enforcement of procedural deadlines, has not only ignored the Constitution, but has overreacted: it has effectively *31 abolished the Legislature’s power to enact a firm filing deadline. Based upon its overbroad reasoning that all filing deadlines necessarily conflict with a district court’s subject matter jurisdiction, the Court, in a breathtakingly broad response, has legislated a “good cause” exception to every procedural deadline the Legislature has ever enacted-in its words, to all “ ‘periods of limitation’ ” which “are scattered throughout the Montana Code Annotated and are ‘too numerous to mention.’ ” Opinion, ¶ 17. The Legislature has thus been stripped of its authority to enact a “rigid statutory prescription.” Opinion, ¶ 16. Beyond the repudiation of the specific constitutional authority provided to the Legislature by Art. VII, Section 4(2), to govern appeals from agencies, this decision, more critically, violates separation of powers by encroaching upon and striking down the Legislature’s fundamental power and violates this Court’s constitutional duty. Obsessed with turning all deadlines into “ ‘claim-processing rule[s],’ ” Opinion, ¶ 16, the Court has lost sight of the fact that these are statutes-enacted pursuant to the Legislature’s separate constitutional authority. By euthanizing them, the Court has overstepped its bounds.
¶38 It is only the Legislature who is constitutionally empowered to enact “good cause” exceptions to statutory deadlines, and it uses that authority often. See e.g. § 16-4-30 l(l)(f), MCA (“the department may, for good cause, waive the 3-day requirement”); § 16-4-416(2), MCA (“[t]he department, upon a showing of good cause, may in its discretion extend the time”); § 32-3-216(3), MCA (“[flor good cause shown within the 60-day period, the department may extend the response period for an additional 30 days”); § 32-3-303(3), MCA (“the department may extend the approval period for an additional 30 days for good cause”); § 33-2-1111(1), MCA (“shall register within 15 days after becoming subject to registration, unless the commissioner for good cause extends the time”); § 33-35-301(2)(b), MCA (“commissioner ... upon a showing of good cause, may extend by 30 days the filing date for the report”); § 46-13-108(1), MCA (“[e]xcept for good cause shown, if the prosecution seeks treatment of the accused as a persistent felony offender, notice of that fact must be given at or before the omnibus hearing”); § 77-6-302(3), MCA (“[u]pon authorization, the movable improvements must be removed within 60 days ... unless the department for good cause grants additional time for the removal”). (Emphases added to all foregoing statutory provisions.) Likewise, the Legislature has the authority to decline to create a “good cause” exception to a filing deadline. Here, the *32 Legislature, pursuant to that authority, determined to prohibit an appeal made directly from a hearing officer’s decision to the district court when the appealing party failed to timely appeal to the Human Rights Commission, and provided no good cause exception. The District Court properly exercised subject matter jurisdiction in this case to ensure the statutes had been followed as they were enacted.
¶39 It is true, as the Court notes, that statutory time bars are subject to constitutional challenge and review. Opinion, ¶ 18. Application of a procedural bar may be found to violate a litigant’s due process rights. See Pickens v. Shelton-Thompson, 2000 MT 131, ¶ 21, 300 Mont. 16, 3 P.3d 603. We have delineated the standards by which we will determine whether due process is satisfied.[1] However, BNSF has not mounted a constitutional challenge to the 14-day statutory time bar enforced in this case, electing instead to rely on jurisdictional arguments, which I would reject.
¶40 Of course, it is cumbersome for courts to entertain constitutional challenges to statutory procedural bars on a case-by-case basis. Thus, the Court avoids such cumber and inconvenience by judicially legislating a good cause exception to every statutory time deadline. I will admit this is a much more convenient approach. However, what is convenient is not always constitutional, and here it is not.
¶41 Then, further narrowing our existing precedent, the Court declares that procedural bars are merely “affirmative defenses that are subject to forfeiture and waiver.” Opinion, ¶ 18. Yet, in Davis, a case on which the Court relies, the Court held that “nothing in our ruling precludes a court from raising, sua sponte, the timeliness of the petition” and enforcing the statutory time bar. Davis v. State, 2008 MT 226, ¶ 24, 344 Mont. 300, 187 P.3d 654. Today, the Court steps away from that holding, essentially implying that a district court can no longer enforce procedural statutes by its own action.
¶42 The Legislature was within its express constitutional authority to enact the statutes at issue here. The Court has erred in its jurisdictional analysis but, worse, has acted beyond its constitutional authority and duty by legislating good cause exceptions to statutory *33 deadlines which are the province of the Legislature. I dissent and would affirm the District Court. Although I would correct the incorrect language used by the District Court, I would nonetheless affirm for the reasons set forth herein.
¶43 In response, the Court asserts that this dissent has relied upon “clearly distinguishable caselaw.” Opinion, ¶ 21. However, this criticism merely seeks to distract from the reality that this dissent relies at root upon Article VII, Section 4 of the Montana Constitution, which gives express authority to the Legislature to govern the issue in this case. The Court cannot bring itself to acknowledge that the Constitution’s “District corurt jurisdiction” provision grants such authority to the Legislature. Although criticizing this dissent at length, the Court is at a loss to explain or apply this express constitutional provision. This is because the Constitution is clearly contrary to the Court’s “jurisdictional theory” and its holding in this case. The Court reasons that its theory of jurisdiction is superior because various scenarios such as tornado strikes will be conveniently resolved thereby. However, the potential for tornado strikes does not excuse us from following the dictates of the Constitution. And when courts refuse to honor, or even discuss, controlling constitutional provisions, so that they may instead adopt their own legal theories, the use of “grandiose language” in opposition is most appropriate.
¶44 I dissent.

 “[D]ue process requirements are flexible and may be adapted to meet the procedural protections demanded by a specific situation. McDermott [v. McDonald, 2001 MT 89,] ¶ 10 [305 Mont. 166, 24 P.3d 200], Accordingly, ‘the process due in any given case varies according to the factual circumstances of the case, the nature of the interests at stake, and the risk of making an erroneous decision.’ McDermott, ¶ 10 [internal citation omitted].” Geil v. Missoula Irrigation Dist., 2002 MT 269, ¶ 58, 312 Mont. 320, 59 P.3d 398.