DA 10-0161

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 290

BNSF RAILWAY COMPANY,
a Delaware corporation,

        Petitioner and Appellant,

   v.

CHAD CRINGLE and MONTANA DEPARTMENT OF
LABOR AND INDUSTRY, HUMAN RIGHTS COMMISSION,

        Respondents and Appellees.

| | |
|---|---|
| APPEAL FROM: | District Court of the First Judicial District, In and For the County of Lewis & Clark, Cause No. BDV-2009-1016 Honorable Jeffrey M. Sherlock, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

           Benjamin O. Rechtfertig and Jeff Hedger, Hedger Friend, PLLC, Billings, Montana

      For Appellees:

           Terry N. Trieweiler, Trieweiler Law Firm, Whitefish, Montana (Chad Cringle)

           Marieke Beck, Department of Labor and Industry, Helena, Montana

                        Submitted on Briefs: October 6, 2010
                                        Decided: December 30, 2010

Filed:

                _____
                          Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     BNSF Railway Company (BNSF) appeals from the judgment of the First Judicial District Court, Lewis and Clark County, dismissing BNSF's petition for judicial review. We reverse and remand.

¶2     We review the following issue on appeal:

¶3     *Does the 14-day filing deadline in § 49-2-505(3)(c), MCA, deprive a district court of jurisdiction over matters arising between the parties after the deadline has expired?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     The Montana Human Rights Bureau determined that BNSF unlawfully had discriminated against Chad Cringle (Cringle) when it denied him employment based solely on a statistical analysis of his height and weight ratio. BNSF appealed the decision to the Human Rights Commission (Commission) several days after the 14-day filing deadline of § 49-2-505(3)(c), MCA, had expired. Both the Commission and the District Court have refused to hear BNSF's reasons for missing the filing deadline based on their conclusion that § 49-2-505(3)(c), MCA, has removed their subject matter jurisdiction.

¶5     BNSF conditionally had offered Cringle employment as a track laborer. BNSF later denied Cringle employment after reviewing his height and weight. BNSF determined that Cringle presented a risk of harm to himself or others based on a statistical analysis of Cringle's height and weight. Cringle filed his complaint charging BNSF with unlawful discrimination in July 2008.

¶6 The Human Rights Bureau found reasonable cause to believe that unlawful discrimination had occurred and forwarded the complaint for a contested case proceeding. The Human Rights Bureau's hearing officer awarded summary disposition in favor of Cringle in May 2009. The hearing officer entered a final decision awarding damages to Cringle on September 2, 2009. The hearing officer also issued and served notice of the decision on September 2, 2009.

¶7 BNSF filed a notice of appeal and a request for an extension of time with the Commission on September 22, 2009. Cringle objected to BNSF's appeal and request for an extension of time. Cringle argued that the expiration of the 14-day filing deadline of § 49-2-505(3)(c), MCA, had rendered final the agency's decision. Cringle further argued that the filing deadline created a jurisdictional bar and deprived the Commission of authority to entertain BNSF's untimely appeal. The Commission denied BNSF's motion for an extension of time and dismissed BNSF's appeal. The Commission did not hear evidence regarding BNSF's reasons for missing the deadline. The Commission did not evaluate whether BNSF had good cause to support its motion and appeal.

¶8 BNSF filed a petition for judicial review in district court on November 2, 2009. BNSF argued that the Commission had authority to extend the 14-day filing deadline and had authority to hear BNSF's reasons why an extension should have been granted. BNSF acknowledged that it had received the hearing officer's final decision on September 3, 2009. BNSF mentioned in its brief that it had missed the appeal deadline due to its staff misfiling the decision or failing to calendar the appeal deadline.

3

¶9      Cringle moved to dismiss BNSF's petition for lack of jurisdiction and failure to state a claim for which relief could be granted pursuant to M. R. Civ. P. 12(b)(1) and (6).  Cringle relied on § 49-2-505(3)(c), MCA, to support his argument that the hearing officer's decision had become "final" and "not appealable to the district court" when BNSF missed the 14-day filing deadline.  The District Court agreed with Cringle, concluded that it lacked subject matter jurisdiction, and dismissed BNSF's petition.

¶10     Cringle then filed an M. R. Civ. P. 60(b) motion for relief on March 23, 2010. Cringle advised the court that though it did not have jurisdiction to set aside the Commission's dismissal of BNSF's appeal, it retained jurisdiction to enforce the hearing officer's decision that had granted damages to Cringle and to award attorney fees.  The court issued a nunc pro tunc order on March 29, 2010, to enforce Cringle's award of damages and determine the amount of attorney fees that BNSF owed to Cringle.  The court entered judgment for Cringle on April 9, 2010.  BNSF now appeals the court's conclusion that § 49-2-505(3)(c), MCA, deprived the District Court of jurisdiction.

STANDARD OF REVIEW

¶11     We review for correctness a district court's review of an administrative agency's decision. *N. Cheyenne Tribe v. Mont. Dept. of Envtl. Quality*, 2010 MT 111, ¶ 19, 356 Mont. 296, 234 P.3d 51.  We review for correctness a district court's conclusions of law. *Id.*  We review de novo a district court's determination regarding its subject matter jurisdiction. *Koeplin v. Crandall,* 2010 MT 70, ¶ 7, 355 Mont. 510, 230 P.3d 797.

DISCUSSION

¶12     *Does the 14-day filing deadline in § 49-2-505(3)(c), MCA, deprive a district court of jurisdiction over matters arising between the parties after the deadline has expired?*

¶13     BNSF argues that § 49-2-505(3)(c), MCA, does not place a jurisdictional limitation on the district court to entertain a petition for judicial review. Cringle responds that the legislature properly circumscribed the court's jurisdiction by enacting § 49-2-505(3)(c), MCA. We agree with BNSF. The legislature does not deprive the courts of subject matter jurisdiction when it enacts filing or notice deadlines. We have required accurate use of the term "jurisdiction" in our more recent history. *Davis v. State,* 2008 MT 226, ¶ 23, 344 Mont. 300, 187 P.3d 654; *Miller v. Eighteenth Jud. Dist. Ct.,* 2007 MT 149, ¶ 43, 337 Mont. 488, 162 P.3d 121; *State v. Clark,* 2008 MT 317, ¶ 21, 346 Mont. 80, 193 P.3d 934 (Nelson & Morris, JJ., concurring); *Steab v. Luna*, 2010 MT 125, ¶ 24, 356 Mont. 372, 233 P.3d 351. We have emphasized the importance of not confusing the situation of a claimant's untimely filing with the district court's subject matter jurisdiction. *See Miller*, ¶¶ 43-44; *Davis,* ¶¶ 19, 22-23.

¶14     We have concluded that "categorical time prescriptions" do not "withdraw" or "circumscribe" the district courts' subject matter jurisdiction. *Miller,* ¶ 45; *Davis,* ¶ 23. In *Davis*, we overruled "*Gray, Pena, Wells*, and other cases to the extent they have held that the Legislature limited district courts' subject matter jurisdiction" by enacting statutory time bars. *Davis*, ¶ 23. We since have consistently confirmed that statutory filing deadlines do not affect a district court's subject matter jurisdiction. *State v. Johnston,* 2008 MT 318, ¶¶ 18-19, 346 Mont. 93, 193 P.3d 925; *Cobb v. Saltiel*, 2009 MT 171, ¶ 33-34, 350 Mont.

5

501, 210 P.3d 138. *See also Lorang v. Fortis Ins. Co.,* 2008 MT 252, ¶¶ 58-62, 345 Mont. 12, 192 P.3d 186; *Clark,* ¶¶ 19-32 (Nelson & Morris, JJ., concurring).

¶15    The Montana Constitution establishes the subject matter jurisdiction of the district courts. Mont. Con. art. VII, § 4; *Miller,* ¶ 45. Article VII, Section 4(1) provides that district courts have "original jurisdiction [. . .] in all civil matters and cases at law and in equity." Article VII, Section 4(2) also provides that "[t]he legislature may provide for direct review by the district court of decisions of administrative agencies." Subject matter jurisdiction involves the court's fundamental authority to hear and adjudicate cases or proceedings. *Lorang*, ¶ 57 (citations omitted). Subject matter jurisdiction "can never be forfeited or waived, nor can it be conferred by the consent of a party." *Davis,* ¶ 20 (quoting *Miller,* ¶ 44).

¶16    We have called procedural time bars by several names. We characterized the one-year time bar for post-conviction relief in § 46-21-102, MCA, as a "rigid, categorical time prescription." *Davis,* ¶ 23. We also described the judicially-enacted 60-day time bar in *Miller* as "a categorical, but nonjurisdictional, time prescription." *Miller,* ¶ 48. We have recognized the federal courts' use of the term "claim-processing rule" to describe procedural time bars. *Miller,* ¶ 44 (referencing *Kontrick v. Ryan,* 540 U.S. 443, 454-56, 124 S. Ct. 906, 915-16 (2004)); *Davis*, ¶ 13 (referencing *Eberhart v. U.S.,* 546 U.S. 12, 13, 126 S. Ct. 403, 403 (2005). We also have referred to such a deadline as a "time limit," "statute of limitation," "time bar," "procedural bar," "rigid statutory prescription," "period of limitation," "notice requirement," or "procedural requirement." *Molnar v. Mont. Pub. Serv.*

6

*Commn.,* 2008 MT 49, ¶ 9, 341 Mont. 420, 177 P.3d 1048; *State v. Redcrow,* 1999 MT 95, ¶¶ 34, 41, 294 Mont. 252, 980 P.2d 622; *Johnston,* ¶ 19; *Rohlfs v. Klemenhagen, LLC*, 2009 MT 440, ¶¶ 29, 33, 354 Mont. 133, 227 P.3d 42.

¶17 These "periods of limitation" are scattered throughout the Montana Code Annotated and are "too numerous to mention." *Rohlfs,* ¶ 33 n. 2. We have distinguished these "categorical time prescriptions" from "jurisdictional provisions" that "delineat[e] the classes of cases (subject-matter jurisdiction) . . . falling within a court's adjudicatory authority." *Miller,* ¶ 43 (citing *Kontrick,* 540 U.S. at 455, 124 S. Ct. at 915). Regardless of the label, none of the judicially or statutorily created procedural deadlines deprive a district court of subject matter jurisdiction. *Miller*, ¶ 45; *Davis,* ¶ 23; *Johnston*, ¶ 21.

¶18 Procedural time bars are affirmative defenses that are subject to forfeiture and waiver. *Marias Healthcare Serv., Inc. v. Turenne,* 2001 MT 127, ¶ 9, 305 Mont. 419, 28 P.3d 491; M. R. Civ. P. 8(c); *Miller,* ¶ 46; *Clark,* ¶ 25 (Nelson & Morris, JJ., concurring); *Zipes v. Trans World Airlines*, 455 U.S. 385, 393, 102 S. Ct. 1127, 1132 (1982). Generally, a litigant who properly raises a procedural time bar may expect the time bar to be applied "regularly and consistently." *Redcrow,* ¶ 34; *Forsythe v. Leydon*, 2004 MT 327, ¶ 9, 324 Mont. 121, 102 P.3d 25 (stating that "a firm time-limit advances the cause of justice by bringing predictability to our process"). Procedural time bars, like the 14-day filing deadline in § 49-2-505(3)(c), MCA, remain subject to constitutional review and equitable principles. *See e.g. Rohlfs* (reviewing the constitutionality of a 180-day notice requirement); *Davis*, ¶ 25 (providing that the district court may consider a motion to toll a statutory filing deadline on

equitable grounds); *Lozeau v. GEICO Indem. Co.,* 2009 MT 136, 350 Mont. 320, 207 P.3d 316 (applying the doctrine of equitable tolling to a three-year statute of limitations); *Salway v. Arkava,* 215 Mont. 135, 140, 695 P.2d 1302, 1305 (1985) (stating that "[c]ourts of general jurisdiction have from the beginning possessed the power to entertain equitable actions to set aside judgments").

¶19 Subsection 49-2-505(3)(c), MCA, provides that "the hearings officer shall issue a decision" after a hearing. Subsection 49-2-505(4), MCA, states that "[a] party may appeal a decision of the hearings officer by filing an appeal with the commission within 14 days after the issuance of the notice of decision of the administrative hearing." Subsection 49-2-505(3)(c), MCA, further provides that "[i]f the decision is not appealed to the commission within 14 days as provided in subsection (4), the decision becomes final and is not appealable to district court."

¶20 The 14-day filing deadline set out in § 49-2-505(3)(c), MCA, does not "withdraw," "circumscribe," "limit," or "affect" the District Court's subject matter jurisdiction. *Miller,* ¶ 45; *Davis,* ¶ 23; *Johnston*, ¶ 21; *Cobb*, ¶ 34. This statutory filing deadline ultimately may bar BNSF from a full appeal on the merits, but it does not deprive the District Court of subject matter jurisdiction over BNSF's petition for review in District Court. The District Court possesses jurisdiction to hear the parties' dispute and adjudicate their issues. The District Court possesses jurisdiction to consider the parties' arguments for the application of equitable doctrines and constitutional principles. *See* § 2-4-702, MCA.

8

¶21 The Dissent aggrandizes today's decision with claims that the Court has "breathtakingly […] legislated a 'good cause' exception to every procedural deadline the Legislature has ever enacted." We agree that this decision resounds with separation of power considerations, but disagree that we have "violate[d] separation of powers," struck "down the Legislature's fundamental power," or "violate[d] this Court's constitutional duty." Stripped of its grandiose language, the Dissent contains no response to any of the caselaw on which the decision rests. Where the Dissent has relied on legal authority, the Dissent has relied on clearly distinguishable caselaw.

¶22 The Dissent's concern regarding the separation of powers further appears misplaced alongside the Dissent's concession that the District Court incorrectly used "jurisdictional language" and erroneously concluded that it lacked jurisdiction to entertain BNSF's appeal. Dissent, ¶¶ 36, 42. The Dissent falls into the linguistic trap identified by this Court's recent opinions, *see* Opinion, ¶ 13, when it attempts to distinguish "this jurisdiction" with the court's authority. *Compare* Dissent, ¶ 32 *with* ¶ 34.

¶23 The Dissent relies on a reference guide's interpretation of *Nye v. Department of Livestock* for the proposition that "only the legislature may validly provide for judicial review of agency decisions." *Nye v. Dept. of Livestock*, 196 Mont. 222, 226, 639 P.2d 498, 500 (1982). *Nye* involved a terminated employee's filing of a petition for judicial review in district court. *Id.* at 223, 639 P.2d at 499. The employee argued that the district court had jurisdiction to hear the claim for wrongful termination based on broad language in an employment policy manual. *Id.* at 225, 639 P.2d at 500. The Court in *Nye* concluded that

9

the policy manual constituted an administrative regulation that could not confer a right to appeal in district court. *Id.* at 226, 639 P.2d at 500. Read in context, the assertion that "only the legislature may validly provide for judicial review of agency decisions" clearly responds to the employee's argument that the policy manual permitted her to sue directly in district court. *Id.*, 639 P.2d at 500. The Dissent ignores this critical distinction.

¶24 The Dissent also relies on *Molnar* and *In re McGurran*, 1999 MT 192, 295 Mont. 357, 983 P.2d 968. Though disguised as a separation of powers concern, the Dissent advocates for the return to a distinction between "jurisdiction" and "authority jurisdictional in nature" that the Court made in *Molnar*, ¶ 9. *See* Dissent, ¶¶ 36, 38. This distinction, insofar as it is even possible to distinguish jurisdiction into separate meanings, has been identified as a source of confusion for our courts and federal courts. *See Miller*, ¶¶ 43-44; *Davis*, ¶¶ 19, 22-23. We refuse to promote this confusing distinction here, just as we have in *Davis*, *Johnston*, *Miller*, *Cobb*, and *Clark*. We abandoned the approach taken in *Molnar* and *In re McGurran* when we decided *Davis*. *Compare Davis,* ¶ 23 *with Davis*, ¶ 29 (Rice, J., dissenting).

¶25 We finally address the Dissent's unfounded implication that our decision restricts a district court's authority to enforce procedural statutes sua sponte. Dissent, ¶ 41. As we emphasized in *Davis,* ¶ 24, and recently confirmed in *Spencer v. Beck,* 2010 MT 256, ¶ 16, 358 Mont. 295, __ P.3d __, a court can raise a procedural time bar sua sponte so long as the court takes due process precautions, including fair notice and providing an opportunity for the parties to present their positions.

10

¶26 The Dissent also presents a laundry list of statutory "good cause" exceptions to statutory deadlines. Dissent, ¶ 38. The Dissent apparently believes that the existence of these statutory exceptions somehow supports its conclusion that courts cannot hear and determine whether a litigant has good cause to justify the missing of a procedural bar. Under the Dissent's approach, a court would be required to deny BNSF's petition for judicial relief even if BNSF had missed the deadline because a tornado that struck its counsel's office had destroyed the entire case file. Under the Dissent's approach, the district court would "properly exercise subject matter jurisdiction" simply by tallying the days that have passed and issuing a denial of judicial review without a hearing, regardless of whether good cause existed. Dissent, ¶¶ 32, 36. Article VII, Section 4(2) of the Montana Constitution does not so diminish and automate the court's role.

¶27 BNSF requests that this Court remand to the Commission to hear its motion for an extension of the 14-day filing deadline in the first instance. BNSF cites to M. R. Civ. P. 6(b) and Admin. R. M. 24.9.113 and Admin. R. M. 24.9.315 in support of its argument that the Commission had authority to extend the filing deadline. We disagree. Subsection 49-2-505(4), MCA, permits BNSF to have appealed the hearing examiner's decision to the Commission only within the 14-day filing deadline. Only the District Court had authority to grant BNSF equitable relief from the procedural bar of § 49-2-505(4), MCA, after the appeal deadline had expired. *See* §§ 2-4-702, -704, MCA.

¶28 On remand, the District Court shall hear BNSF's alleged good cause that would justify its motion for an extension of time. If the District Court finds good cause, it shall

11

order the Commission (1) to grant BNSF's motion for an extension of time, and (2) to hear and determine the merits of BNSF's appeal. If the District Court concludes that BNSF's motion lacks good cause, it shall deny the motion for an extension of time and resolve any other outstanding matters presented by BNSF's petition.

¶29 Reversed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH

/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON

Justice Jim Rice, dissenting.

¶30 In my view, the Court has misapplied jurisdictional principles, misinterpreted the Constitution, and failed to follow our holdings. Worse, the Court has acted beyond its own constitutional powers by legislating a "good cause" exception to virtually every procedural bar passed by the Legislature. In its zeal to diminish the effect of procedural bars, the Court has gone too far. I strongly dissent.

¶31 The Court states repeatedly that legislatively enacted filing deadlines do not deprive the courts of subject matter jurisdiction. *See* Opinion, ¶¶ 13, 14, 17, 20. In fact, virtually the entire analysis of the Opinion is dedicated to this proposition. *See* Opinion, ¶¶ 13-20. While I generally agree with this proposition—that legislative acts may improperly impinge the jurisdiction of the courts—that did not happen here. The Court's jurisdictional analysis is insufficiently nuanced and misses the real issue in this case—the express constitutional authority given to the Legislature.

¶32 The District Court clearly had subject matter jurisdiction to entertain BNSF's appeal from the agency decision and to address the issues raised therein. We have previously explained this concept. *Molnar v. Mont. Pub. Serv. Commn.*, 2008 MT 49, ¶ 9, 341 Mont. 420, 177 P.3d 1048 ("the District Court possessed general subject matter jurisdiction to review the agency decision . . . ."); *see also In re McGurran*, 1999 MT 192, 295 Mont. 357, 983 P.2d 968. The District Court had jurisdiction to determine whether BNSF's appeal was validly filed, whether the cross-petitions seeking enforcement of the agency decision were valid, and whether an award of attorney fees to the prevailing party in this discrimination proceeding was appropriate pursuant to § 49-2-505(8), MCA. Nothing the Legislature did deprived the court of this jurisdiction. While the District Court used incorrect language in denying relief to BNSF for "lack of jurisdiction," a phrase which, unfortunately, courts are wont to employ, it nonetheless had jurisdiction to do exactly what it did, and reversal is not necessary.

13

¶33 However, the Court reverses on the ground that the Legislature's enactment of a filing deadline and a limitation upon appeals made directly from a hearing officer to the courts impermissibly conflicts with a district court's subject matter jurisdiction. For the following reasons, I believe there is no such conflict in this case.

¶34 First, the Constitution has granted the Legislature express authority over appeals to the district courts from agency determinations. Right within Article VII, Section 4, entitled "District court jurisdiction," the Constitution provides that "[t]he legislature may provide for direct review by the district court of decisions of administrative agencies." Mont. Const. art. VII, § 4(2). The Court quotes this provision in passing, *see* Opinion, ¶ 15, but fails to discuss it or acknowledge that it has any effect. Further, the Court fails to advise that we have previously interpreted it contrary to the Court's holding today. Placed within the "District court jurisdiction" section of the Constitution, the provision expressly grants authority over agency appeals to the Legislature. As one commentary has explained this provision of the Constitution:

> This section establishes the basic trial and appellate jurisdiction for district courts . . . .
>
> .  .  .
>
> As to appellate jurisdiction, the principal litigation concern has been review of administrative action. The Montana Supreme Court has emphasized the legislative role in providing for administrative review. *Only the legislature may provide for judicial review of administrative actions* (*Nye v. Department of Livestock*, 1982), *and the legislature may deny or restrict the right of review from administrative decisions to a particular court*.

14

Larry M. Elison & Fritz Snyder, *The Montana State Constitution: A Reference Guide* 144-45 (Greenwood Press 2001) (emphasis added). The comment correctly cites our decision in *Nye v. Department of Livestock*, 196 Mont. 222, 639 P.2d 498 (1982), where we held: "In Montana, only the legislature may validly provide for judicial review of agency decisions. 'The legislature may provide for direct review by the district court of decisions of administrative agencies.' Mont. Const. art. VII, § 4, cl. 2. A right of judicial review cannot be created by agency fiat." *Nye*, 196 Mont. at 226, 639 P.2d at 500. We held similarly in *Molnar*, ¶ 7: "We have held that only the Legislature may validly provide for judicial review of agency decisions. *Nye v. Dept. of Livestock*, 196 Mont. [at] 226, 639 P.2d [at] 500). As such, a court's authority to review administrative rulings is constrained by statute."

¶35 Pursuant to its constitutional authority, the Legislature enacted the appeal provisions at issue in this case, particularly, § 49-2-505, MCA. Subsection (4) provides that "[a] party may appeal a decision of the hearings officer by filing an appeal with the commission within 14 days after the issuance of the notice of decision of the administrative hearing." Section 49-2-505(4), MCA. Then, critically, subsection (3)(c) provides:

> If the decision is not appealed to the commission within 14 days as provided in subsection (4), *the decision becomes final and is not appealable to district court*.

Section 49-2-505(3)(c), MCA (emphasis added). It should first be noted that, by the plain words of this provision, the Legislature made no direct effort to limit the subject matter jurisdiction of the district court—in other words, to declare that district courts lacked jurisdiction to entertain appeals from state agencies. Rather, it exercised its constitutional

authority to govern agency appeals by prohibiting parties from "leapfrogging" over the Human Rights Commission and seeking direct review by a district court if they have failed, first, to timely appeal to the Human Rights Commission. If a party fails to appeal from a hearing officer's decision within 14 days, the Legislature has declared the hearing officer's decision is to be "final" and nonappealable.

¶36 Within this statute, the Legislature utilized the subject matter jurisdiction of the district court by authorizing appeals to the district court *after* the Commission has rendered a decision. Section 49-2-505(9), MCA. It further utilized that jurisdiction by permitting district courts to award attorney fees and costs to a prevailing party following an agency decision. Section 49-2-505(8), MCA. This case played out exactly as the statutes envisioned. Despite its incorrect use of jurisdictional language, the District Court had jurisdiction to entertain BNSF's appeal and to determine whether, pursuant to the statutory provisions, BNSF had the right to proceed. Determining that BNSF's appeal was in violation of statute, the District Court properly denied the appeal. Also pursuant to its subject matter jurisdiction, it ordered the agency decision, declared "final" by statute, to be enforced and granted attorney fees to Cringle.

¶37 However, the Court, which apparently sees only the potential for inequity in the enforcement of procedural deadlines, has not only ignored the Constitution, but has overreacted: it has effectively abolished the Legislature's power to enact a firm filing deadline. Based upon its overbroad reasoning that all filing deadlines necessarily conflict with a district court's subject matter jurisdiction, the Court, in a breathtakingly broad

16

response, has legislated a "good cause" exception to every procedural deadline the Legislature has ever enacted—in its words, to all " 'periods of limitation' " which "are scattered throughout the Montana Code Annotated and are 'too numerous to mention.' " Opinion, ¶ 17. The Legislature has thus been stripped of its authority to enact a "rigid statutory prescription." Opinion, ¶ 16. Beyond the repudiation of the specific constitutional authority provided to the Legislature by Art. VII, Section 4(2), to govern appeals from agencies, this decision, more critically, violates separation of powers by encroaching upon and striking down the Legislature's fundamental power and violates this Court's constitutional duty. Obsessed with turning all deadlines into " 'claim-processing rule[s],' " Opinion, ¶ 16, the Court has lost sight of the fact that these are *statutes*—enacted pursuant to the Legislature's separate constitutional authority. By euthanizing them, the Court has overstepped its bounds.

¶38     It is only the Legislature who is constitutionally empowered to enact "good cause" exceptions to statutory deadlines, and it uses that authority often. *See e.g.* § 16-4-301(1)(f), MCA ("the department may, for **good cause**, waive the 3-day requirement"); § 16-4-416(2), MCA ("[t]he department, upon a showing of **good cause**, may in its discretion extend the time"); § 32-3-216(3), MCA ("[f]or **good cause** shown within the 60-day period, the department may extend the response period for an additional 30 days"); § 32-3-303(3), MCA ("the department may extend the approval period for an additional 30 days for **good cause**"); § 33-2-1111(1), MCA ("shall register within 15 days after becoming subject to registration, unless the commissioner for **good cause** extends the time"); § 33-35-301(2)(b), MCA

("commissioner . . . upon a showing of **good cause**, may extend by 30 days the filing date for the report"); § 46-13-108(1), MCA ("[e]xcept for **good cause** shown, if the prosecution seeks treatment of the accused as a persistent felony offender, notice of that fact must be given at or before the omnibus hearing"); § 77-6-302(3), MCA ("[u]pon authorization, the movable improvements must be removed within 60 days . . . unless the department for **good cause** grants additional time for the removal"). (Emphases added to all foregoing statutory provisions.) Likewise, the Legislature has the authority to decline to create a "good cause" exception to a filing deadline. Here, the Legislature, pursuant to that authority, determined to prohibit an appeal made directly from a hearing officer's decision to the district court when the appealing party failed to timely appeal to the Human Rights Commission, and provided no good cause exception. The District Court properly exercised subject matter jurisdiction in this case to ensure the statutes had been followed as they were enacted.

¶39 It is true, as the Court notes, that statutory time bars are subject to constitutional challenge and review. Opinion, ¶ 18. Application of a procedural bar may be found to violate a litigant's due process rights. *See Pickens v. Shelton-Thompson*, 2000 MT 131, ¶ 21, 300 Mont. 16, 3 P.3d 603. We have delineated the standards by which we will determine whether due process is satisfied.[1] However, BNSF has not mounted a constitutional

---

[1] "[D]ue process requirements are flexible and may be adapted to meet the procedural protections demanded by a specific situation. *McDermott* [*v. McDonald*, 2001 MT 89,] ¶ 10 [305 Mont. 166, 24 P.3d 200]. Accordingly, 'the process due in any given case varies according to the factual circumstances of the case, the nature of the interests at stake, and the risk of making an erroneous decision.' *McDermott*, ¶ 10 [internal citation omitted]." *Geil v. Missoula Irrigation Dist.*, 2002 MT 269, ¶ 58, 312 Mont. 320, 59 P.3d 398.

18

challenge to the 14-day statutory time bar enforced in this case, electing instead to rely on jurisdictional arguments, which I would reject.

¶40 Of course, it is cumbersome for courts to entertain constitutional challenges to statutory procedural bars on a case-by-case basis. Thus, the Court avoids such cumber and inconvenience by judicially legislating a good cause exception to every statutory time deadline. I will admit this is a much more convenient approach. However, what is convenient is not always constitutional, and here it is not.

¶41 Then, further narrowing our existing precedent, the Court declares that procedural bars are merely "affirmative defenses that are subject to forfeiture and waiver." Opinion, ¶ 18. Yet, in *Davis*, a case on which the Court relies, the Court held that "nothing in our ruling precludes a court from raising, *sua sponte*, the timeliness of the petition" and enforcing the statutory time bar. *Davis v. State*, 2008 MT 226, ¶ 24, 344 Mont. 300, 187 P.3d 654. Today, the Court steps away from that holding, essentially implying that a district court can no longer enforce procedural statutes by its own action.

¶42 The Legislature was within its express constitutional authority to enact the statutes at issue here. The Court has erred in its jurisdictional analysis but, worse, has acted beyond its constitutional authority and duty by legislating good cause exceptions to statutory deadlines which are the province of the Legislature. I dissent and would affirm the District Court. Although I would correct the incorrect language used by the District Court, I would nonetheless affirm for the reasons set forth herein.

¶43 In response, the Court asserts that this dissent has relied upon "clearly distinguishable caselaw." Opinion, ¶ 21. However, this criticism merely seeks to distract from the reality that this dissent relies at root upon Article VII, Section 4 of the Montana Constitution, which gives express authority to the Legislature to govern the issue in this case. The Court cannot bring itself to acknowledge that the Constitution's "District court jurisdiction" provision grants such authority to the Legislature. Although criticizing this dissent at length, the Court is at a loss to explain or apply this express constitutional provision. This is because the Constitution is clearly contrary to the Court's "jurisdictional theory" and its holding in this case. The Court reasons that its theory of jurisdiction is superior because various scenarios such as tornado strikes will be conveniently resolved thereby. However, the potential for tornado strikes does not excuse us from following the dictates of the Constitution. And when courts refuse to honor, or even *discuss*, controlling constitutional provisions, so that they may instead adopt their own legal theories, the use of "grandiose language" in opposition is most appropriate.

¶44 I dissent.

/S/ JIM RICE

20